IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |   |
|---|---|---|
| DELBERT HEARD, | ) ) ) | |
| Plaintiff, | ) ) | 06 C 0644 |
| v. | ) ) | Judge Virginia M. Kendall |
| ILLINOIS DEPARTMENT OF CORRECTIONS, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Delbert Heard is a prison inmate who filed suit against Wexford Health Sources, Inc. ("Wexford"), an Illinois Department of Corrections' (IDOC) healthcare contractor, Dr. Partha Ghosh, a Wexford employee, and Dr. Williard Elyea, IDOC's medical director, alleging that they ignored his worsening hernias for years, choosing to treat them with ibuprofen and "watchful waiting" rather than surgery. After several years of this watching, Heard's hernias strangulated and he had emergency surgery to correct them. He now sues Defendants, alleging that they were deliberately indifferent to his serious medical condition thereby causing him severe pain. Wexford and the doctors assert that they were following an established policy that comports with the medical standard of care and that the case is nothing more than Heard disagreeing with their medical judgment about how to treat the hernias. Based on the Court's prior rulings, (Doc. 314), Heard's claim for deliberate indifference to his medical needs will proceed to trial, at which Heard seeks to admit expert testimony from Dr. Scott Glaser on pain management. Presently before the Court is

1

the Defendants' motion in limine to bar Dr. Glaser's testimony in its entirety. (Docs. 334, 336). For the following reasons, the Court grants in part and denies in part the Defendants' motions.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999) (emphasis in original). Finally, the expert's testimony must be relevant; in other words, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904. "'The focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate.'" *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the

relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho*, 526 U.S. at 152).

**DISCUSSION**

Dr. Glaser, who is an anesthesiologist board-certified in pain management, will opine that: 1) Heard suffered pain; 2) the pain was not necessary; 3) the physicians' refusal to allow Heard a low-risk surgery in light of his pain violated the canons of medical ethics; 4) the physicians' conclusion that Heard was not suffering sufficient pain to merit a low-risk surgery lacked any reasonable basis; and 5) the physicians' conclusion that Heard was not suffering sufficient pain to merit a low-risk surgery endangered Heard's life. (Doc. 336, Ex. A, p. 2). Defendants argue that Dr. Glaser's opinions should be barred because he is an anesthesiologist and therefore is not qualified to render an opinion on whether and when surgery should be performed to repair inguinal hernias. In addition, they argue that Dr. Glaser cannot opine on the IDOC procedures for granting and performing surgery because he is not qualified to do so.

**A. Qualifications**

Dr. Glaser's curriculum vitae indicates that he graduated from medical school in 1986 and completed his residency and fellowship in anesthesiology at Northwestern Memorial. He worked as an anesthesiologist and developed pain clinics, first in Michigan until 1992, then in Illinois until 2000, during which he delivered anesthesia to more than one hundred patients undergoing herniorrhaphies. Soon after the American Board of Anesthesiology began offering board certification in pain management in 1996, Dr. Glaser was certified and then re-certified in 2005. Since 2001, Dr. Glaser has been a founding member of the Pain Specialists of Greater Chicago and currently serves as the President of the physician group. In that capacity, he currently specializes in

the management of pain through precision injections and other treatments using live X-ray guidance to diagnose and treat the source of a patient's pain. Since 2006, he has been a diplomat of the American Board of Anesthesiology's pain management board, was elected twice to the board of the American Society of Interventional Pain Physicians, and served as its President and currently serves as its Vice-President. Dr. Glaser has published several articles on pain management in a peer-reviewed publication entitled *Pain Physician Journal*, and has lectured publicly on pain management before other physicians, primary care physicians and students. (6/25/12 Transcript, p. 37). The Court's review of Dr. Glaser's credentials indicates that he has more than twenty years of career experience in diagnosing patients' sources of pain, reviewing medical records and discussing the risks and benefits of treatment options with patients, then creating a treatment plan for patients.

The Defendants argue that Dr. Glaser's medical experience as a specialist in pain management does not extend to the diagnosis and treatment of hernias, which is rather within the purview of general practitioners and internists. While a physician in general practice is competent to testify about problems that a medical specialist typically treats, *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010), the Defendants argue that here, a specialist is incompetent to testify about problems that an internist or generalist treats. However, "[t]the question we must ask is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for him to answer a specific question." *See Id.* The fact that Dr. Glaser is not a surgeon does not automatically prevent him from testifying about hernias and their treatment. Dr. Glaser testified that he has diagnosed hernias, referred patients to surgeons for herniorrhaphy, administered anesthesia during nearly 100 herniorrhaphies and seen patients with post-operative pain from herniorrhaphies. (6/25/12 Transcript, p. 51). His clinical training, professional practice and publications have made

4

him experienced in the risks and benefits of surgeries such as herniorrhaphy. Consequently, he has the adequate medical knowledge, experience, training and education qualify him as an expert.

**B. Methodology**

Turning to the second step in the analysis, the Court must determine whether the expert's methodology in reaching his conclusions is scientifically reliable. Dr. Glaser's report states that his opinions are based upon his review of Heard's medical records and medical history, Heard's original and amended complaints, the Defendants' original and amended answers, the transcripts of depositions of Heard, Dr. Liefer, Dr. Elyea, Dr. Darbandi, Dr. Funk, Dr. Ghosh and Dr. Ngu. Dr. Glaser also read two reports: "Surgical Options in the Management of Groin Hernias" by Tim Bax, MD, Brett Sheppard, MD, Richard Crass, MD, in *American Family Physician*, Oregon Health Sciences University, Portland Oregon (1999), and "Watchful Waiting vs. Repair of Inguinal Hernia in Minimally Symptomatic Men: A Randomized Clinical Trial" by Robert Fitzgibbons, Jr., MD, et al., in *Journal of the American Medical Association* Vol. 295, No. 3 (2006). The Defendants argue that Dr. Glaser's failure to review IDOC procedures and unfamiliarity with correctional medicine undermine the credibility of his opinions that Heard's pain was not necessary, or that the physician's failure to provide him with corrective surgery violated the canons of medical ethics and lacked any reasonable basis. However, Dr. Glaser's review comports with the accepted methodology in clinical medicine of reliance on a patient's medical history and available medical treatments. *See Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000) (reversing exclusion of physician's expert testimony because "in clinical medicine, the methodology of physical examination and self-reported medical history . . . is generally appropriate."). The purpose of the rule announced in *Daubert* "was to make sure that when scientists testify in court they adhere to the same standards of

intellectual rigor that are demanded in their professional work." *Id.* at 1020 (citing *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)). In fact, Federal Rule of Evidence 703 explicitly permits reliance on material "reasonably relied upon by experts in the particular field in forming opinions or inferences." In the field of clinical medicine, Dr. Glaser's review was sufficiently thorough to opine on the appropriateness of surgery, without determining whether surgery was available at that time and place. The *Daubert* analysis of an expert witness's reliability rests on the expert's process rather than his conclusions. *See Mid-State Fertilizer Co.*, 877 F.2d at 1339 (*Daubert* requires "a process of reasoning beginning from a firm foundation"); *see also Winters v. Fru-Con Inc.*, 498 F.3d at 742 ("The focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate."). Dr. Glaser's process comports with the method deemed sufficient by the medical community, by which he concluded that surgery was appropriate given Heard's self-reported pain. If Dr. Glaser's testimony is lacking in familiarity with prison procedures for delivering surgery that he deemed appropriate, then the Defendants may certainly cross-examine him on those short-comings. "*Daubert* acknowledged the continuing vital role that 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof,' 509 U.S. at 596, are to play in the trier of fact's ultimate evaluation of admissible but shaky evidence." *Id.* at 1021.

### C. Relevance

The Defendants do not object generally to Dr. Glaser's proposed testimony as irrelevant or unhelpful to the jury's determinations of contested issues of fact. The Defendant object on specific grounds to certain portions of Dr. Glaser's proposed testimony and his report's conclusions.

6

**Opinion 1: Heard suffered pain**

Dr. Glaser's first opinion is that Heard suffered pain, based on his review of Heard's medical record containing notes from treating physicians of Heard's statements about his pain. This issue is relevant to the jury's determination; however, the jury will hear directly from Heard and will consider the credibility of his testimony about the extent and occurrences of his pain. The jury will also hear from Heard and his treating physicians what prescriptions and accommodations he received while incarcerated for his pain. Dr. Glaser's first opinion would repeat Heard's statement and have the effect of bolstering Heard's credibility about his pain by lending credence to notes within his medical record–notes recording Heard's own statements. Whether or not the testimony of a particular witness should be considered credible is "generally not an appropriate subject matter for expert testimony." *US v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999). That is, experts may not offer their opinion as to whether they believe, or disbelieve, the testimony of a party or particular lay witness, "because an expert cannot testify as to credibility issues." *Goodwin v. MTD Prod., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). Consequently, Dr. Glaser may not testify that, based on his expert opinion, Heard suffered pain. He can state, however, that the medical treatments Heard received are consistent with an individual who is suffering pain. He acan also testify that the records show that he complained of pain. He just may not testify that Heard was in pain because he is not in a position to be able to do that.

**Opinion 2: Heard's pain was not necessary**

Dr. Glaser's second opinion is that Heard's pain was not necessary given the medical procedures and treatments usually available for his symptoms and pain. Because Dr. Glaser's medical practice centers on assisting patients who are evaluating the risks and benefits of available

7

procedures, he is well-qualified to explain to the jury what the risks and benefits are to a patient deciding whether to undergo a hernniorhaphy. Of course, in this case, Heard had already decided that he wanted the surgery performed and therefore advice typically dispensed prior to decision-making would be irrelevant. However, Dr. Glaser's opinion of the low risks of minimally invasive treatments for hernias, and the high risks of emergency surgery, will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

**Opinion 3: The physicians' refusal to allow Heard a low-risk surgery in light of his pain violated the canons of medical ethics**

Dr. Glaser's third opinion is that Heard's treatment failed to comport with codified canons of medical ethics. While experts may offer testimony that "embraces an ultimate issue to be decided by the trier of fact," Fed. R. Evid. 704, expert testimony that is "largely on purely legal matters and made up of solely legal conclusions" is inadmissible. *Good Shepard Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Any opinion that the Defendants acted with deliberate indifference, or any opinion likely to be understood to that effect, is a legal conclusion as to Defendants' liability under § 1983, and must be barred. *See Id.* Consequently, Dr. Glaser may not use the terms "willful and wanton" to collectively describe the physicians' failure to provide his herniorrhaphy. *See West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997) ( "[w]hen an expert offers an opinion about the application of a legal standard, an expert's role is "limited to describing sound professional standards and identifying departures from them"). He may testify as to existing standards of medical professional conduct codified by the American Medical Association and opine on how the treatment Heard received departed from these standards.

The Defendants, and particularly Dr. Elyea, object that Dr. Glaser fails to name specific physicians in Heard's course of treatment to identify how each acted or failed to act, and how that

8

act or failure to act departed from acceptable standards of professional conduct. Dr. Glaser testified that he was unable to remember which doctor or doctors were responsible for preventing Heard from receiving a herniorrhaphy but that further review of the medical record would inform him of each doctor's role. (6/25/12 Transcript, p. 79). However, neither *Daubert* nor the Federal Rules of Evidence requires an expert to review all of the facts, only a "sufficient" amount is required. *See* Fed.R.Evid. 702(1) Advisory Committee's Note (calling for a quantitative rather than a qualitative analysis). The question for the Court is whether the expert considered enough information to make the proffered opinion reliable. *See* Charles Alan Wright & Victor James Gold, Federal Practice and Procedure §6266, at 41 (Supp. 2004). An "expert's work is admissible only to the extent that it is reasoned, uses the methods of the discipline, and is founded on data." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006) (citation omitted). Consequently, Dr. Glaser's failure to name specific physicians is not dispositive to the Court's inquiry of whether Dr. Glaser's testimony is admissible and the Defendants may challenge his statements as overly generalized upon cross-examination.

**Opinion 4: The physicians' conclusion that Heard was not suffering sufficient pain to merit a low-risk surgery lacked any reasonable basis**

Dr. Glaser's fourth opinion, that Heard's treating physicians' conclusion that Heard's pain did not merit surgery lacked any reasonable basis, is premised on his experience patients suffering from chronic pain. Dr. Glaser will opine that a patient suffering from pain and electing to undergo surgery should be provided that surgery, regardless of whether he is or is not exhibiting outward signs of experiencing pain. The Defendants' main objection is that Dr. Glaser failed to review the IDOC procedure for authorizing surgery, much less elective surgery, and therefore cannot opine on the availability of surgery. (6/25/12 Transcript, p. 84, 91). As explained above, Dr. Glaser's review

9

of Heard's medical record, premised on Heard's self-report of pain, was sufficiently thorough to lead him to conclude that surgery was desired by Heard. *See* Fed.R.Evid. 702(1) Advisory Committee's Note (calling for a quantitative rather than a qualitative analysis). His review of the medical record did not reveal any contra-indications to surgery, which is a determination that the Defendants are allowed to challenge upon cross-examination.

> **Opinion 5: The physicians' conclusion that Heard was not suffering sufficient pain to merit a low-risk surgery endangered Heard's life**

Dr. Glaser's fifth opinion, that Heard's life was endangered by the Defendants' course of treatment, is not challenged directly by the Defendants. This opinion falls within his aforementioned expertise on the risks and benefits of treatments and surgery and foregoing either.

## DISCUSSION

The Defendants' motion *in limine*, to bar opinions, testimony or evidence from Dr. Glaser, is granted in part and denied in part as detailed above.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 29, 2012

10